IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                         No. CR 12-1609 JB

MAURICIO MONROY-REYNOSO,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the United States's Objection to the Presentence Report, filed Oct. 4, 2012 (Doc. 16)("USA Objections to PSR"); and (ii) the Defendant's Objections to Presentence Report, filed Nov. 6, 2012 (Doc. 23)("Defendant's Objections to PSR"). The Court held a sentencing hearing on December 13, 2012. The primary issues are: (i) whether, under the parties' Fast Track Plea Agreement, filed July 3, 2012 (Doc. 13)("FT Plea Agreement"), Defendant Mauricio Monroy-Reynoso's offense level is 6 or 8; (ii) whether the Court can properly rely on a sealed document in state court to assess criminal history points; and (iii) whether the Court can properly rely on hearsay from state court personnel to assess criminal history points. Because the FT Plea specifies that the Offense level is 8, the Court will sustain the objection to the use of an offense level of 6. The Court will overrule the objections to ¶¶ 28 and 31 of the Presentence Investigation Report (disclosed August 27, 2012)("PSR"), which relies on the sealed document and on the hearsay to calculate the criminal history. The sealed document has been unsealed for the Court and parties' purposes, and the Court and the parties now have more than hearsay to support the conviction in PSR ¶ 31.

## PROCEDURAL BACKGROUND

Monroy-Reynoso pled guilty to Unlawful Entry after Deportation under the FT Plea Agreement in which the parties agreed to a stipulation, under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, to a specific U.S.S.G. criminal offense level.  See FT Plea Agreement ¶4(e), at 3.  The FT Plea Agreement stipulates that Monroy-Reynoso will be denied the full benefits of the Fast Track if he scores a criminal history score of 13 or more points.  Paragraph 4(e) states:

> Unless the defendant has been previously convicted of a crime of violence or has a Criminal History Category of VI, the Government agrees, pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P., to a downward departure/adjustment to determine defendant's Final Adjusted Offense Level, as described in this subparagraph. Defendant's Base Offense Level (Column A) will be the sum of Offense Level 8 plus the sentencing guideline adjustment for defendant's most serious prior criminal conviction as determined by the sentencing court.  Defendant's Final Adjusted Offense Level (Column B) will be the Base Offense Level minus a downward adjustment for acceptance of responsibility, and minus a four-level downward departure pursuant to USSG § 5K3.1.

| (A) If BOL is: | (B) Then final adjusted OL shall be: |
|---|---|
| 24 | 17 |
| 20 | 13 |
| 16 | 9 |
| 12 | 6 |
| 8 | 2 |

> If, after the defendant has pled guilty, the United States learns, either through the disclosure of the Presentence Report or otherwise, that the defendant has a prior conviction for a crime of violence or a CHC of VI, the parties agree that the defendant will receive a two-level downward departure pursuant to USSG § 5K3.1 instead of a four-level departure, unless the United States determines, in its sole discretion, that the defendant is ineligible for participation in the fast track program because of aggravating or extenuating circumstances.  If the United States determines that the defendant is ineligible for the program, the United States will not oppose a motion to withdraw the defendant's guilty plea.

FT Plea Agreement ¶ 4(e), at 3-4.  Paragraph 4(f) of the FT Plea Agreement states:

> For the purposes of this plea agreement, a "crime of violence" includes murder, kidnapping, voluntary manslaughter, forcible sex offenses, child sex offenses, burglary of a dwelling and any other felony that: (1) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (2) is an offense that, by its nature, involves a substantial risk that physical force against the person or property of another may be used negligently, recklessly or intentionally in the course of committing the offense.

The United States Probation Office ("USPO") disclosed the PSR on August 27, 2012. The USPO calculated a base offense level of 8. See PSR ¶ 15, at 5. The PSR provided for a 4-level enhancement under U.S.S.G. § 2L1.2(b)(1)(D), because he had been previously deported after a felony conviction. See PSR ¶ 15, at 5. The USPO thus calculated the Adjusted Offense Level (Subtotal) as 12. See PSR ¶ 19, at 6. The USPO then reduced the offense level by 2 levels for Monroy-Reynoso's acceptance of responsibility. See PSR ¶ 21, at 6. Pursuant to the rule 11(c)(1)(C) FT Plea Agreement and U.S.S.G. § 5K3.1, the PSR reduced the offense level by 4 levels and concluded that the total offense level is 6. See PSR ¶ 22, at 6.

As one of Monroy-Reynoso's adult criminal convictions, PSR ¶ 28 states:

| 02/07/2006 (Age 26) | Harassment - 2nd Degree Physical Contact/Queens County Criminal Court, Queens, NY; Case No.: 2006QN006956 | 03/17/2006: Guilty plea, sentenced to a conditional discharge upon completion of compliance program 05/16/2007: Completion of program | 4A1.1(c) | 1 |

> The defendant was represented by counsel. The information was obtained from a representative from the Queens County Criminal Court and a police report received from the New York Police Department. The report indicates on February 7, 2006, during a home visit, officers observed the defendant inside in violation of a protection order, which was effective until February 9, 2006. It should be noted the defendant used the name Omar Lopez Cruz in this offense.

PSR ¶ 28, at 7.

Paragraph 31 of the PSR provides the following information regarding another of Monroy-Reynoso's adult criminal convictions:

| | | | | |
|---|---|---|---|---|
| 02/09/2009 (Age 29) | Conspiracy - 5th Degree/Queens County Supreme Court Queens, NY; Case No.: 02576-2007 | 05/26/2009: Guilty plea 06/18/2009: Sentenced to 6 months imprisonment | 4A1.1(b) | 2 |

> The defendant was represented by counsel. The information was obtained from a representative from the Queens County Supreme Court and a police report from the New York Police Department. The report indicates on February 9, 2009, the defendant was arrested on an arrest warrant for two counts of Forgery. The defendant pled guilty to the lesser charge mentioned above. The circumstances for this case are not available.

PSR ¶ 31, at 8.

The USPO calculates that Monroy-Reynoso has 13 criminal history points. See PSR ¶ 33, at 9. Monroy-Reynoso's criminal history category is VI. See PSR ¶ 34, at 9. An offense level of 6, combined with a criminal history category of VI, establishes a guideline range of 12 to 18 months. See PSR ¶ 52, at 11.

The United States objects to paragraph 22 of the PSR, which provides that Monroy-Reynoso's total offense level is 6. See USA Objections to PSR at 1. While not specific, the United States apparently is suggesting that the USPO should have departed 2 levels pursuant to the FT Plea Agreement rather than 4 levels. See USA Objections to PSR at 1. An offense level of 8 combined with a criminal history category of VI establishes a guideline range of 18 to 24 months. The United States apologizes for not catching this alleged error earlier and did not object to a continuance of the sentencing hearing if Monroy-Reynoso wished to file a response. See USA Objections to PSR at 1. The sentencing hearing was moved. See Order, filed Nov. 30, 2012 (Doc. 26)(granting the parties' Stipulated Motion to Continue Sentencing Scheduled for December 7, 2012, filed Nov. 30, 2012 (Doc. 25)).

Monroy-Reynoso submitted a memorandum to assist the Court in calculating his criminal history and thus, in sentencing him. Monroy-Reynoso requests that the Court reduce his guideline criminal history points from 13 to 10, and his criminal history category from VI to V, thereby qualifying him for the Fast Track Program that he was denied based on the FT Plea Agreement's terms. See Defendant's Objections to PSR at 1.

On November 7, 2012, the Honorable Thomas Marten, United States District Judge for the United States District Court for the District of Kansas, was sitting as a visiting judge in the United States District Court for the District of New Mexico and held a sentencing hearing for Monroy-Reynoso. Monroy-Reynoso raised issues about the proof of the convictions in PSR ¶¶ 28 and 31. He requested proof of the prior convictions. While Monroy-Reynoso informed the Court that the rest of the convictions were accurately included, he contested the validity of the convictions in ¶¶ 28 and 31 because no proof of the convictions were provided to him. Monroy-Reynoso informed Judge Marten that he received a sealed document on November 5, 2012, which contained proof of the conviction in ¶ 28, but that he was uncertain whether that proof is a proper basis for the PSR, as the document is sealed.

Monroy-Reynoso confirmed that the sealed document related to ¶ 28. He stated that he was under the impression that the document was sealed because the charges were going to be dismissed. Monroy-Reynoso contested whether the sealed document was sufficient evidence of the conviction listed in ¶ 28, as the document was an affidavit, which only provided that he pled to a conviction. Regarding ¶ 31, Monroy-Reynoso related that he has no documentation on the conspiracy conviction. Thus, Monroy-Reynoso stated that he could not confirm whether the conviction related to him or not.

Monroy-Reynoso stated that, as a practical matter, he did not think his Defendant's

Objections to PSR made it clear that his argument is that there is no proof at all to support the convictions in ¶¶ 28 and 31.  Monroy-Reynoso wanted to make clear that he was not making an over-representation argument.  The Judge Marten acknowledged that he understood Monroy-Reynos's contention.  Monroy-Reynoso explained that an over-representation argument would violate the FT Plea Agreement.  Monroy-Reynoso stated that he is asking the Court to rule on his objection, because he does not think that the Court can rely on the sealed document.  Monroy-Reynoso admitted that he had 13 points and, if his objection to either ¶ 28 or ¶ 31 is sustained, his offense level would remain at 6 and his criminal history would be V, and he would be eligible for the full benefit of the FT Plea Agreement.

Judge Marten asked the United States what its position is with respect to these convictions.  The United States informed the Court that it stands by the USPO's review and analysis.  The United States stated that it was somewhat at a loss as to how to deal with Monroy-Reynoso's objection.  The United States stated that it knows the United States Probation Officer, Yvonne Kincaid, to be thorough and competent at her job, and this document and the hearsay conversation are what she found.  The United States stated that, in its experience, when there is a disagreement of this nature, the procedure has been for the defense to file a motion to continue the sentencing for the parties and the USPO to resolve the matter.  The United States acknowledged that Monroy-Reynoso had yesterday filed an objection to the PSR, but stated that there is nothing else to go on besides Ms. Kincaid's analysis and report, by which the United States stands.

Ms. Kincaid stated that she had spoken with the New York Supreme Court on three occasions.  She stated that she had spoken to an individual, and had given her Monroy-Reynoso's name and the number of the conviction; this woman verified the conviction.  Ms Kincaid asked the woman to send the document by facsimile transmission, but the New York court would not, insisting

on sending the document by regular mail.  Ms. Kincaid confirmed that her communications with the New York Supreme Court yielded information which indicates that there was a conviction, but that the state court would not send the information by facsimile transmission.

Judge Marten stated that there was no compelling reason to push forward that day with the matter, so he set this matter aside until documentation is received and until Monroy-Reynoso has an opportunity to review it.  Judge Marten stated that if it turns out, as he suspected it would, that the conviction is valid, then Monroy-Reynoso will have a criminal history category of VI.  Judge Marten stated that, on the other hand, if it turns out either of these convictions is not valid for some reason, Monroy-Reynoso will have a criminal history category of V, and the parties can then discuss the applicability of the early disposition program.  Judge Marten stated that he was not willing to decide the issue one way or the other when he, the parties, and the USPO have proof of the conviction on its way to Albuquerque.

Monroy-Reynoso emphasized that he is asking the Court to determine whether there is a reasonable belief that these documents are available.  Monroy-Reynoso stated that he had been asking for these documents since September.  He also stated that he intended to file a motion, and thus asked the Court not to do anything for a few days.  Monroy-Reynoso said that he thought that he had grounds for a motion for representation and that, and if he did not have a plea agreement, he would pursue the over-representation route and ask the Court for the same sentence that he would have received with the full benefit of the FT Plea Agreement.

Judge Marten reminded Monroy-Reynoso that he was not going to be the judge who would decide Monroy-Reynoso's motion, and Monroy-Reynoso acknowledged that he understood that reality.  Judge Marten stated that the Court could proceed to sentencing if Monroy-Reynoso was willing to accept the information currently in the PSR, but Judge Marten stated he was certain

Monroy-Reynoso would not want to do so. Judge Marten stated that, if he were in Monroy-Reynoso's position, he would wait. Monroy-Reynoso did not want to proceed. Judge Maren stated that he thought that the USPO had made every request that it can and that there is nothing to do but wait for the mail. Judge Marten stated that this way all interested parties will know whether they are dealing with accurate information. Judge Marten stated that, as far as he was concerned, Monroy-Reynoso has leave to file anything that he wants to file once that documentation arrives, including a request for a departure, for over representation, or a variance, and then the USPO and the United States have a right to respond if they think responding is appropriate. Judge Marten then set this matter aside, and continued the case.

## **RELEVANT LAW REGARDING EVIDENCE USED AT SENTENCING**

The standard of admissibility for evidence at sentencing is different than at trial. A preponderance-of-the-evidence standard applies at sentencing. See United States v. Manatau, 647 F.3d 1048, 1054 n.2 (10th Cir. 2011)(noting that the preponderance-of-the-evidence standard applies during sentencing); United States v. Gomez-Arrellano, 5 F.3d 464, 466 (10th Cir.1993)("Sentencing determinations of relevant conduct and offense characteristics must be supported by a preponderance of the evidence.").

Additionally, evidence which is not admissible at trial may be admissible at sentencing. A court may, under the Sentencing Guidelines, consider hearsay during sentencing. See United States v. Beaulieu, 893 F.2d 1177, 1179 (10th Cir. 1990)(holding that reliable hearsay may be used in sentencing under the guidelines); United States v. Cunningham, No. CR 06-2493, 2008 WL 6049940, at * 13 (D.N.M. Oct. 28, 2008)(Browning, J.)("[T]he Court may rely on hearsay at sentencing so long as it has sufficient indicia of reliability to support its probable accuracy." (alteration in original)(internal quotation marks omitted)). As U.S.S.G. § 6A1.3 states: "In resolving

any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3.  Likewise, Confrontation Clause protections do not apply in the sentencing context.  See United States v. Bustamante, 454 F.3d 1200, 1202-03 (10th Cir. 2006)(recognizing that Crawford v. Washington, 541 U.S. 36 (2004), does not apply to sentencing proceedings).

## ANALYSIS

If the criminal history category is correctly calculated at VI, the Court should sustain the United States' objection.  If, however, Monroy-Reynoso's objection to his criminal history category is correct, the total offense level should remain at 6.  The Court concludes that the USPO has correctly calculated Monroy-Reynoso's criminal history at VI.

**I.     THE COURT WILL SUSTAIN THE UNITED STATES' OBJECTION.**

The United States contends that, pursuant to paragraph 4(e) of the FT Plea Agreement, Monroy-Reynoso's rule 11(c)(1)(C)'s offense level should be 8.  Monroy-Reynoso maintains that the offense level is 6.  The plain language of the FT Plea Agreement states that, if the defendant has a criminal history category of VI, Monroy-Reynoso will receive a 2-level downward departure instead of a 4-level departure.  Unless the Court sustains Monroy-Reynoso's objection to the criminal history category of VI, his offense level is 8.

**II.    THE USPO CORRECTLY CALCULATED MONROY-REYNOSO'S CRIMINAL HISTORY CATEGORY.**

Monroy-Reynoso challenges the 3 points assessed against him in ¶¶ 28 and 31 of the PSR, which the USPO used to calculate his criminal history category.  The objection to reliance on a

sealed document is not sound, because the state court has given the sealed document to the Court and the parties. As to the hearsay objection, the USPO has now collected documents from the state court that support the state court's hearsay statements.

### A. THERE IS ADEQUATE DOCUMENTARY PROOF OF THE CONVICTION FOR PARAGRAPH 28 OF THE PSR.

Monroy-Reynoso objects to the points he receives in ¶ 28 of the PSR because the USPO used a sealed document to obtain the information in that paragraph. The state court has, however, sent the document to the Court, and the USPO has shared the document with the parties. Monroy-Reynoso argues that the Court should not rely on the document, because the Court was never supposed to see it. The Court believes that it likely could rely on a sealed judgment as long as it had reliable information that the conviction took place. The Court is confident that it can rely on the information if it has the document in its hand, and can share it with counsel and the parties.

The conviction took place, and the Court has reliable information to make that conclusion. The sealed document to which Monroy-Reynoso refers provides the case disposition of a criminal matter pertaining to Omar Lopez Cruz. See Criminal Court of the City of New York, County of Queens, Certificate of Disposition # 215373, dated Nov. 5, 2012 ("CCNY Certificate of Disposition"). The USPO has explained, based on its conversation with the Queens County Criminal Court, that Monroy-Reynoso used the name "Omar Lopez Cruz" in this offense. PSR ¶ 28, at 7. The CCNY Certificate of Disposition notes that O. Cruz was arrested on February 7, 2006, and received his sentence for a guilty plea on March 17, 2006. The CCNY Certificate of Disposition further provides that O. Cruz pled guilty to a violation of N.Y. Penal Law § 240.26 (McKinney), the crime of Harassment in the Second Degree. See CCNY Certificate of Disposition at 1. Together, the USPO's conversations with the Queens County Criminal Court and the CCNY Certificate of

Disposition are of sufficient reliability to be used at sentencing, and establish by a preponderance of the evidence that Monroy-Reynoso was convicted of Harassment in the Second Degree on March 17, 2006, and that his sentence of conditional discharge was successfully completed on May 16, 2007.

Monroy-Reynoso argues that the sealing of the CCNY Certificate of Disposition appears to prevent the use of the document. Monroy-Reynoso represents that he believed that the charges listed in the CCNY Certificate of Disposition were dismissed as the result of a first offender program. Monroy-Reynoso appears to suggest that the Court's reliance on the CCNY Certificate of Disposition defeats the state's purpose in keeping the document sealed. It is unclear what the state's purpose in sealing the document is, so it is equally unclear what purpose the Court is allegedly undermining. In any case, the Court's task is different from that of the state court. While the state court may be trying to help Monroy-Reynoso with rehabilitation or to get work by sealing the CCNY Certificate of Disposition, the Court's task is to accurately calculate his criminal history for the purpose of reflecting his past conduct fairly and predicting his future criminal conduct. To ignore a conviction because the state court is not showing it to certain people would not be consistent with the Court's task. Accordingly, the Court will rely on the document and overrule Monroy-Reynoso's objection to the criminal history point assessed because of the conviction ¶ 28 of the PSR represents.

  **B. THERE IS ADEQUATE DOCUMENTARY PROOF OF THE CONVICTION IN PARAGRAPH 31.**

Monroy-Reynoso objects to the points he receives in PSR ¶ 31 because he alleges there is a lack of any documentary proof for the conviction detailed in ¶ 31. The PSR states that, based on a hearsay conversation with a Queens County clerk in New York, whom Monroy-Reynoso contends

-11-

is not known to the author of the PSR, and based upon a New York Police Department report, the alleged conviction in ¶ 31 is valid.

At the first sentencing hearing, Monroy-Reynoso contended that no documentation was available to support PSR ¶ 31. Since the first sentencing hearing, the USPO has secured documents from the state court that confirms the information which state court personnel orally relayed to the USPO. The USPO has received a Supreme Court of the State of New York Certificate of Disposition, # 21318, dated Nov. 8, 2012 ("SCNY Certificate of Disposition"), which details Monroy-Reynoso's conviction of Conspiracy in the Fifth Degree on May 26, 2009. The SCNY Certificate of Disposition further provides that Monroy-Reynoso pled guilty on June 18, 2009, and was sentenced to 6 months imprisonment. See SCNY Certificate of Disposition at 1. The case number in the SCNY Certificate of Disposition is the same as in PSR ¶ 31. Compare SCNY Certificate of Disposition at 1, with PSR ¶ 31, at 8. The Court therefore has reliable information, both orally and in written form, of the conviction. The Court will overrule the objection to the 2 criminal history points assigned to that conviction.

In conclusion, the USPO has correctly calculated Monroy-Reynoso's criminal history category as VI. Accordingly, the offense level is 8. An offense level of 8 combined with a criminal history category of VI establishes a guideline imprisonment range of 18 to 24 months.

**IT IS ORDERED** that the United States's Objection to the Presentence Report, filed Oct. 4, 2012 (Doc. 16), is sustained, and the Defendant's Objections to Presentence Report, filed Nov. 6, 2012 (Doc. 23), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Norman Cairns
John Stanford
David Walsh
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Dorothy C. Sanchez
Albuquerque, New Mexico

    *Attorney for the Defendant*